SHARP, Judge.
A jury found Salazar guilty of importing marijuana and conspiracy to import marijuana. The jury heard and considered Salazar’s confession given to the Crystal River police at the police station. Prior to the trial, Salazar moved to suppress the confession because it was not freely or voluntarily given[1] and because it was given as a result of his unlawful arrest.[2] The trial court denied the motion, and the issue on appeal is whether or not it erred in so ruling.
When a defendant challenges the admissibility of his confession because of fifth and fourth amendment violations, the state has the burden of making an initial showing that no constitutional rights were violated.[3] Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975) and Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979) require the state or prosecution to show, where there has been an unlawful arrest followed by a confession, that the confession was not caused or produced by the unlawful arrest. The giving of proper Miranda warnings alone is insufficient. The court must also consider (1) the temporal proximity of the arrest and confession; (2) any intervening circumstances which do not break the chain of events between the confession and the arrest, and (3) the purpose and flagrancy of the police misconduct. If the link between the confession and the unlawful arrest is not sufficiently “attenuated,” then the confession must be excluded because it is “fruit from the poisonous tree.” However, if there is no unlawful arrest or if the defendant willingly agrees to a “search,” a later confession does not create a fourth amendment violation.[4]
At the suppression hearing the prosecution presented sufficient evidence to show Salazar confessed after adequate Miranda warnings were given, and without threat or promise of immunity or lenient treatment. Salazar had been in the police chiefs office for approximately 30 minutes before he made his confession. Outside in the lobby were 14 to 20 other “Latin males.” They had been picked up by the police because of their proximity to a van, small boats in a barge canal, and a stranded shrimp boat, the Lady Rhonda, which had run aground nearby, and which was loaded with marijuana. Salazar indicated he did not want to talk with these other persons, nor did he want to be seen by them, and he remained apart from them at his choice. The police officers testified Salazar was not under arrest at the time his confession was given.
At the trial, Salazar renewed his motion to suppress his confession, and the trial court again denied the motion. The evidence at the trial showed that the Marine Patrol of the sheriff’s department boarded the Lady Rhonda, after being invited aboard by the sole occupant of the stranded vessel, a Latin male with a disabled leg. The boat was loaded with marijuana. Other Latin males were observed by the police with a van, trucks and smaller boats at a nearby barge canal. They had no fishing gear, and their presence appeared “suspicious.” When the Lady Rhonda’s cargo was positively identified as marijuana, the police began “rounding up” all persons of Latin heritage or origin in the area. At least one luckless, but innocent hitchhiker was “caught” in this “round-up.” We do not condone such “gestapo” tactics, but Salazar was not picked up in this manner.
*833 Chief Pellam testified that the following morning he received a call from the police in a neighboring town, Inglis. The caller said there was a white male in a phone booth at the Withlacoochee Motel, who had no luggage and no apparent reason for being there. Pellam sent Officer Worsham to talk with the man, and to bring him to Crystal River to talk with them, if he was willing to come. Worsham testified he met Salazar at the motel restáurant, where he was drinking coffee with a local police officer. Salazar explained he had been fishing with a group of people on the canal, and they had left him. He was trying to telephone his wife. Worsham asked Salazar if he would accompany him to the Crystal River Police station: “I requested that he come and he said yes he would.” Worsham said he did not arrest Salazar and the state concedes it lacked probable cause to arrest Salazar at that point.
This is a “close” case. Dunaway and Brown both involved defendants who were clearly seized and subjected to unlawful arrests. At the suppression hearing, the police officers said Salazar had not been arrested and he was in the police chief’s office at his choice, because he did not want to be seen by other suspects. Salazar offered no testimony to show he had been arrested or unlawfully seized. At the trial, evidence was presented to show Salazar agreed to accompany Worsham to the police station voluntarily.[5] Again, Salazar did not deny or counter that testimony.
Technically, the state should have presented all of this evidence at the suppression hearing. However, we shall consider all of it in reviewing the trial court’s ultimate conclusion at trial that the confession was admissible,[6] because, in all fairness to the state and prosecution, Dunaway and Mendenhall had not been decided at the time of the suppression hearing, and the police “misconduct” in this case was not admitted nor clearly established as in Brown and Dunaway. See Williams v. U. S., 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971). We conclude on balance that this case is more similar to Mendenhall, than to Brown, and accordingly, it is
AFFIRMED.
FRANK D. UPCHURCH, Jr., J., concurs.
DAUKSCH, C. J., dissents with opinion.

. U.S. Const. amend. V; Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1969).

. U.S. Const. amend. IV; Dunaway v. New York, 442, U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).

. Dunaway v. New York, 442 U.S. 200, 99 S.Ct. 2248, 60 L.Ed.2d 824 (1979); Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975); Reddish v. State, 167 So.2d 858 (Fla. 1964); Cason v. State, 373 So.2d 372 (Fla.2d DCA 1979), cert. denied, 383 So.2d 1202 (Fla. 1980); State v. Dixon, 348 So.2d 333 (Fla.2d DCA 1977); cert. denied, 355 So.2d 517 (1978).

. U. S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

. U. S. v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

. Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975).